DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
PETER J. KEITH, State Bar #206482
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3908
Facsimile:     (415) 554-3837
E-Mail:        peter.keith@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE KRELL,<br><br>       Plaintiff,<br><br>       vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, OFFICER BEL GELASIO, (#20), OFFICE OF THE TREASURE AND TAX COLLECTOR, RON MEUNIER (#14), OFFICER CHARLES SMITH, OFFICER ADRIAN GIANINI, and DOES 1-40,<br><br>       Defendants. | Case No. 15-cv-01833 KAW<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[FED. R. CIV. P. 12(b)(6)]**<br><br>Hearing Date:     August 6, 2015<br>Time:           11:00 a.m.<br>Judge:          Hon. Kandis A. Westmore<br>Place:          Courtroom 4, 3d floor, 1301 Clay Street, Oakland, CA<br><br>Trial Date:      Not set. |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................... 1

BACKGROUND ...................................................................................................................... 3

    I.    San Francisco's Parking Tax Enforcement Provisions ........................................... 3

    II.   Plaintiff's Claims ....................................................................................................... 5

LEGAL STANDARD .............................................................................................................. 7

DISCUSSION ........................................................................................................................... 7

    I.    Krell fails to plead facts to show a municipal custom related to any of his
          constitutional claims, as required for municipal liability under section 1983. ........ 7

    II.   Alternatively, San Francisco is not liable under section 1983 because Krell does
          not plead sufficient facts to support any of his several constitutional claims .......... 9

          A.   Krell has no Fourth Amendment claim arising from searches of other
                persons. .................................................................................................. 10

          B.   Krell cannot make out a Fourteenth Amendment due process violation,
                because California law provides adequate due process. ........................ 10

          C.   Krell's Fourteenth Amendment equal protection claim fails because he
                does not plead facts to support a claim of discriminatory enforcement
                based on whether a parking operator is "politically connected." ............... 11

          D.   Krell's First Amendment retaliation claim against San Francisco fails
                because the facts pled support an "obvious alternative explanation" for
                the actions that Krell attacks – and do not make a retaliatory motive
                plausible. ................................................................................................ 11

    III.  Krell's California law claim is barred by state law immunities ............................. 15

          A.   Government Code section 821.6 bars all of Krell's state law claims
                because the challenged enforcement actions were all incident to
                administrative proceedings against Krell. .............................................. 15

          B.   Separately, Government Code section 860.2 also bars all of Krell's state
                law claims because the challenged actions stem from administrative
                proceedings "incidental to ... collection of a tax" or otherwise from "the
                application of any law relating to a tax." ................................................ 17

          C.   Additional state law immunities provide redundant protections for San
                Francisco. ............................................................................................... 18

CONCLUSION ....................................................................................................................... 19

## TABLE OF AUTHORITIES

**State Cases**

*All Angels Preschool/Daycare v. County of Merced*
  197 Cal. App. 4th 394 (2011) ...........................................................17

*Amylou R. v. County of Riverside*
  28 Cal. App. 4th 1205 (1994) ......................................................16, 17

*Asgari v. City of Los Angeles*
  15 Cal. 4th 744 (1997) .....................................................................16

*Baughman v. State of California*
  38 Cal. App. 4th 182 (1995) ............................................................16

*Cf. Ainsworth v. Bryant*
  34 Cal. 2d 465 (1949) ......................................................................18

*Cf. Citizens Capital Corp. v. Spohn*
  133 Cal. App. 3d 887 (1982) ...........................................................17

*Cowing v. City of Torrance*
  60 Cal. App. 3d 757 (1976) .............................................................19

*Ingram v. Flippo*
  74 Cal. App. 4th 1280 (1999) ..........................................................17

*Javor v. Taggart*
  98 Cal. App. 4th 795 (2002) ............................................................16

*Johnson v. City of Loma Linda*
  24 Cal. 4th 61 (2000) ......................................................................14

*Kemmerer v. County of Fresno*
  200 Cal. App. 3d 1426 (1988) .........................................................16

*Mitchell v. Franchise Tax Bd.*
  183 Cal. App. 3d 1133 (1986) .........................................................17

*Ogborn v. City of Lancaster*
  101 Cal. App. 4th 448 (2002) ..........................................................19

*Paterson v. City of Los Angeles*
  174 Cal. App. 4th 1393 (2009) ........................................................16

*Ross v. San Francisco BART*
  146 Cal. App. 4th 1507 (2007) ........................................................16

*Thompson v. City of Lake Elsinore*
  18 Cal. App. 4th 49 (1993) ..............................................................18

**State Statutes & Codes**

California Government Code section 815.2 ...............................................................15, 16

California Government Code section 818.4 ...............................................................15, 18

California Government Code section 821.2 ...............................................................15, 18

California Government Code section 821.6 ..................................................2, 15, 16, 17, 18

California Government Code section 821.8 ...............................................................15, 19

California Government Code section 860.2 ...............................................................15, 17, 18

California Government Code section 53069.4 ............................................................4, 10

**Federal Cases**

*AE ex rel. Hernandez v. County of Tulare*
   666 F.3d 631 (9th Cir. 2012) ............................................................................8

*Alderman v. United States*
   394 U.S. 165 (1969) ......................................................................................10

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .........................................................2, 7, 8, 9, 10, 11, 12, 15

*Bd. of County Comm'rs v. Brown*
   520 U.S. 397 (1997) ........................................................................................8

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ...........................................................................7, 9, 10, 15

*Blair v. City of Pomona*
   223 F.3d 1074 (9th Cir. 2000) .........................................................................8

*Brogan v. San Mateo County*
   901 F.2d 762 (9th Cir. 1990) ...........................................................................10

*Bull v. City and County of San Francisco*
   595 F.3d 964 (9th Cir. 2010) ...........................................................................9

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*
   751 F.3d 990 (9th Cir. 2014) ........................................................................7, 12

*Gant v. County of Los Angeles*
   772 F.3d 608 (9th Cir. 2014) ...........................................................................9

*In re Century Aluminum Co. Secs. Litig.*
   729 F.3d 1104 (9th Cir. 2013) .........................................................................12

*Kay v. City of Rancho Palos Verdes*
   504 F.3d 803 (9th Cir. 2007) ...........................................................................18

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) ........................................................................6

*Lacey v. Maricopa County*
    693 F.3d 896, (9th Cir. 2012) ........................................................................11

*Lazy Y Ranch Ltd. v. Behrens*
    546 F.3d 580 (9th Cir. 2008) ........................................................................11

*Misischia v. Pirie*
    60 F.3d 626 (9th Cir. 1995) ........................................................................14

*Monell v. Department of Social Services*
    436 U.S. 658 (1978)........................................................................7, 9, 12

*Moreland v. Las Vegas Metro. Police Dep't*
    159 F.3d 365 (9th Cir. 1998) ........................................................................10

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011) ........................................................................8, 9

*Thompson v. City of Los Angeles*
    885 F.2d 1439 (9th Cir. 1989) ........................................................................9

*Trevino v. Gates*
    99 F.3d 911 (9th Cir. 1996) ........................................................................9

*United States v. Armstrong*
    517 U.S. 456 (1996)........................................................................11

*University of Tennessee v. Elliott*
    478 U.S. 788 (1986)........................................................................14

**Federal Statutes**
42 U.S.C. § 1983........................................................................2, 7, 8, 9, 10, 15

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 7

**San Francisco Statutes, Codes & Ordinances**
San Francisco Police Code........................................................................13

San Francisco Tax Code article 6 ........................................................................3, 4, 6, 10, 11, 14, 15

San Francisco Tax Code article 9 ........................................................................3

San Francisco Tax Code article 22 ........................................................................3, 4, 5, 6, 13, 14, 19

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

Please take notice that on August 6, 2015, at 11:00 a.m., before the Honorable Kandis A. Westmore, in Courtroom 4, Third Floor at U.S. District Court, 1301 Clay Street in Oakland, California, or as soon thereafter as this matter can be heard, the City and County of San Francisco ("San Francisco"), will and hereby does move for dismissal with prejudice of all claims in Plaintiff Bruce Krell's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

San Francisco is entitled to dismissal of all causes of action in the Complaint because it fails to state any claim upon which relief can be granted. This motion to dismiss is based on this Notice of Motion and Motion to Dismiss and Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all filed or lodged herewith, as well as the file in this case, the argument of counsel at the hearing, and any such further matters as the Court deems appropriate.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

San Francisco imposes a tax on paid parking and requires parking operators to collect the parking tax from customers and remit those funds to the Tax Collector. To ensure proper revenue collection, San Francisco has enacted several ordinances imposing requirements on parking operators. These ordinances, contained in the San Francisco's Business & Tax Regulations Code (S.F. Tax Code), are enforced through various certificate requirements as well as citations for violators. Those citations can be appealed administratively and are subject to judicial review in California courts at reduced cost.

Plaintiff Bruce Krell operates a small outdoor parking lot in San Francisco. Krell alleges that San Francisco began to enforce the S.F. Tax Code against his parking lot after he got into an argument with individual defendant Adrian Giannini. Krell alleges that he was singled out as a result of this argument, and as a result of Krell's not being "politically connected." Krell faults San Francisco for deciding to investigate him, for initiating administrative enforcement proceedings through administrative citations, and publicizing those proceedings to his detriment. Among other things, tax

officials posted the citations of Krell "in a very obvious manner, across Plaintiff's door, at 345 Grove Street, highly visible and embarrassing."  As a consequence of these citations, San Francisco delayed approval of Krell's Certificate of Authority to collect parking taxes (COA), a certificate that parking operators like Krell are required to hold under the San Francisco Tax Code – a requirement that is enforced under penalty of receiving further administrative citations.

Krell's federal claim is that the alleged conduct violates the First, Fourth, and Fourteenth Amendments to the Constitution, and also gives rise to section 1983 liability on the part of San Francisco.  But Krell fails to state a federal claim against San Francisco.  Initially, all of Krell's claims against San Francisco fail because the conclusory "facts" he alleges are insufficient to establish municipal liability under the pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Alternatively, these claims fail on the merits.  Krell's Fourth Amendment claim fails because the only searches alleged to be unlawful were of individuals other than Krell – and Krell may not assert others' Fourth Amendment rights.  Krell's Fourteenth Amendment due process claim fails because there is an adequate state law remedy, which he did not use.  Krell's Fourteenth Amendment equal protection claim fails because he does not plead facts to show that similarly situated individuals were treated differently.  And Krell's First Amendment retaliation claim fails because it is not plausible on the meager facts he has pled against San Francisco.

Krell also makes a state law negligence claim.  But any liability under California law is precluded by governmental immunities.  Two such immunities each pose a complete bar to Krell's claims.  First, California Government Code section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting . . . any judicial . . .  proceeding within the scope of his employment, even if he acts maliciously and without probable cause," and this immunity also shields the City.  Second, Government Code section 860.2 completely shields tax authorities from damages claims.  And additional state law immunities provide redundant protections.

The Court should dismiss the Complaint.

## BACKGROUND

### I.     San Francisco's Parking Tax Enforcement Provisions

Krell's claims – and why they should be dismissed – cannot be understood without some background about the legal framework for paid parking in San Francisco.  That framework is contained in San Francisco's Business & Tax Regulations Code (S.F. Tax Code).  *See* Request for Judicial Notice, Exh. A (S.F. Tax Code article 6), Exh. B (S.F. Tax Code article 9), Exh. C (S.F. Tax Code article 22).

San Francisco imposes a substantial tax of 25% on paid parking.  Under article 9 of the S.F. Tax Code, the parking tax is levied against customers.  S.F. Tax Code art. 9, §§ 602, 602.5.  But it is the parking operators who are obligated to actually collect that tax from their customers, *id.* art. 9, § 603, and then remit the funds to the Tax Collector on a monthly basis, along with monthly returns, *id.* art. 6, § 6.7-2.  The parking operators hold that revenue in trust for the City.  *Id.* art. 6, § 6.7-1.  That revenue ultimately goes to the City's general fund, and it may be spent for any public purpose.  S.F. Code art. 9, § 615.

Given the significant amount of public funds entrusted to parking operators – much of it received as cash – San Francisco strives to keep that revenue secure by imposing numerous requirements on parking operators.

Among other things, operators must obtain proper licenses and certificates from the Tax Collector.  As relevant here, article 6 of the S.F. Code requires operators to obtain a Certificate of Authority to collect parking tax (COA).  *Id.* art. 6, § 6.6-1(b).  To receive or renew a COA, an operator must meet several requirements.  The operator must post a bond in favor of the City.  *Id.* art. 6, § 6.6-1(h)-(k).  A COA, however, need not be issued if the operator is not fully compliant with all aspects of the S.F. Tax Code.  *Id.* art. 6, § 6.6-1(d), (f).  Indeed – and also relevant to the present case – a COA cannot be issued until an operator has installed appropriate revenue control equipment and has met the other requirements of article 22 of the S.F. Tax Code.  *Id.* art. 6, § 6.6-1(m).

Article 22 contains several additional requirements for parking operators.  Article 22 specifies the "revenue control equipment" (RCE) that operators must install in lots to accurately track revenue – and it imposes a wide range of technical requirements for RCE, depending on lot revenue and rate

structures. *Id.* art. 22, §§ 2203-2210.  Article 22 also requires operators to maintain auditable records, to accurately post their rates, and to inform the public of the right to receive a receipt.  *Id.* art. 22, §§ 2218, 2220.

Several provisions of the S.F. Tax Code confer authority on the Tax Collector's employees to conduct inspections to ensure compliance with the Code and to ensure accurate revenue reporting. Inspection powers are extensive, with investigators having "authority to inspect Parking Stations, RCE, RCE Records, and books of account to ensure that an Operator is in compliance with this Article, that all required RCE is functioning as required by this Article, and that Rent and Parking Taxes are accurately reported and collected."  *Id.* art. 22, § 2225; *see also id.* art. 22, § 2216 (authority to periodically inspect parking stations).  Those inspections are conducted by Tax Collector investigators like the individual defendants here.

These permitting and other requirements are enforced by means of an administrative citation system.  The California Legislature has expressly authorized California cities to enforce their local laws through a process of administrative citation and administrative review, rather than through the criminal law process.  Cal. Gov. Code §53069.4 (a)(1) (local agency "may by ordinance make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty," which is subject to "administrative review by the local agency").  Under this authority, San Francisco enacted an administrative citation system to enforce several requirements of the S.F. Tax Code.  S.F. Tax Code art. 6, §§ 6.19-3 *et seq.*  The Code sets the monetary penalty depending on the violation, and it identifies which Tax Collector employees are empowered to issue citations.  *Id.* art. 6, § 6.19-3.  The Code provides for the information that is to be included in a citation, and how it is to be paid.  *Id.* art. 6, §§ 6.19-4, 6.19-5, 6.19-7.  Service of citations can involve "affixing the citation to a surface in a conspicuous place on the property."  *Id.* art. 6, § 6.19-6.  An operator who contends it complied with the Code may protest a citation by paying it under protest and filing an administrative appeal to the Tax Collector within 15 days.  *Id.* art. 6, § 6.19-8.  If the Tax Collector denies the protest, judicial review is available by way of an appeal to the Superior Court within 20 days of mailing of the Tax Collector's decision, with the Superior Court filing fee being only $25.00.  *Id.* art. 6, § 6.19-10 (incorporating judicial review provisions of Cal. Gov. Code § 53069.4).

## II.    Plaintiff's Claims

Plaintiff Bruce Krell is the operator of a small parking lot at 325 Grove Street in San Francisco. Complaint ¶ 26.  The lot provides paid parking, for professional workers during the day and to patrons of the performing arts in the evening.  *Id.* ¶ 3.  Krell never received any citations related to his lot before the events alleged in the Complaint.  *Id.* ¶ 4.  Krell is not politically connected.  *Id.* ¶ 15.

Krell alleges "on information and belief" that San Francisco has "an official, de facto policy of discrimination against persons who are not politically connected and/or against persons who complain about or protest unlawful/illegal conduct by City employees."  *Id.* ¶ 16.  There are several boilerplate allegations regarding supposed municipal customs and policies, offered on "information and belief." Complaint ¶¶ 13-25.  The Complaint, however, does not include any factual explanation.  The Complaint does not identify any other instances of discrimination, nor does it offer any facts about any instance of favorable treatment of a similarly situated parking operator who is politically connected.

As to Krell himself, the Complaint alleges that one evening about two years ago, Krell got into a confrontation with San Francisco employee Adrian Giannini.  Krell and Giannini argued about Giannini driving his vehicle into Krell's lot and parking across two parking spaces that were to be used by theatergoers that evening.  Ultimately, Giannini relented and moved his vehicle.  Complaint ¶¶ 28-29.

Krell alleges that as a result of this argument with Giannini, "a pattern of harassment and retaliation ensued."  *Id.* ¶ 30.  That pattern consists of two inspections by San Francisco employees, an unspecified number of citations, the San Francisco Tax Collector delaying the issuing of a COA for 2014, and the Tax Collector's not yet issuing any COA for 2015.

Although the S.F. Tax Code confers authority to conduct inspections of parking stations, S.F. Tax Code art. 22, §§ 2216, 2225, Krell alleges that two inspections of his parking station were harassing, because they were conducted by Tax Collector employees and uniformed San Francisco police officers, who photographed the lot and demanded to see and count money collected by parking attendants during a busy theater evening when the lot was in operation.  Complaint ¶ 31.  Krell also alleges that unspecified individuals "unlawfully searched persons working at the lot," but Krell does

not allege that he was one of the persons who was searched. *Id.* As to why the searches were unlawful, no facts are provided. *Id.*

Krell alleges having received "retaliatory citations." Krell does not allege, however, that any of these citations were issued without probable cause or legal basis. And although Krell concedes that an appeal process exists for citations – which he calls a "sham" – he does not allege that he exhausted administrative remedies, he does not allege the result of any administrative appeal, and he does not allege the termination of any judicial action in his favor. Complaint ¶ 34.

Krell also alleges as "harassing" that "when citations were issued, these were taped in a very obvious manner, across Plaintiff's door, at 345 Grove Street, highly visible and embarrassing." Complaint ¶ 32. (As noted above, the S.F. Tax Code provides for service of citations by posting them in a "conspicuous place." S.F. Tax Code art. 6, § 6.19-6.)

Krell also complains of delays in issuing his Certificate of Authority. Krell alleges that he has posted the required bond and "maintained required records" to obtain a COA. Complaint ¶ 27. However, Krell does not allege that he has complied with all of the *other* requirements of the S.F. Tax Code, such as using the revenue control equipment required by article 22 of the S.F. Tax Code. Krell contends that approval of his 2015 COA was "delayed for specious reasons" – but he also alleges that one reason for the delay may be the citation he received on February 10, 2015. Complaint ¶ 33. That citation involved five violations: (1) failure to obtain or post a certificate of authority to collect third party taxes (violating S.F. Tax Code art. 6, § 6.6-1(d)); (2) failure of an operator in the business of renting parking space in a parking station to post a bond (violating S.F. Tax Code art. 6, § 6.6-1(h); (3) operating a parking station without utilizing RCE or business practices and procedures as required by article 22 (violating S.F. Tax Code art. 22, §§ 2203 *et seq.*); (4) failure to maintain RCE records as required by article 22 (violating S.F. Tax Code art. 22, § 2218); (5) failure to comply with any other obligation or duty imposed under the Business & Tax Regulations Code (violating S.F. Tax Code art. 22, section 2220, consumer protection). *See* Request for Judicial Notice, Exhibit D (February 10, 2015 citation).[1] Krell makes no allegation that he appealed this February 10, 2015 citation, instead

---

[1] The February 10, 2015 citation may be considered on a motion to dismiss under the "incorporation by reference" doctrine, because the Complaint references the citation. *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005).

alleging that the appeal process is a "sham" because appeal is made to the administrative agency. Complaint ¶ 34.

**LEGAL STANDARD**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court applied this standard in a civil rights case, and explained the two-step inquiry that a court should follow.

First, a court should identify and disregard certain types of "allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 555, alteration in *Iqbal*). Rather, a court should consider only the "well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Second, a court should evaluate whether the claim is not merely conceivable, but actually plausible. Plaintiffs must make "factual allegations that 'nudg[e] their claims across the line from conceivable to plausible.'" *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570, alteration in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

This process "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**DISCUSSION**

**I.     Krell fails to plead facts to show a municipal custom related to any of his constitutional claims, as required for municipal liability under section 1983.**

To establish municipal liability on the part of San Francisco under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Complaint must plead specific facts showing: (1) that San

Francisco deprived Krell of a constitutional right; (2) that San Francisco had a custom created by those who may fairly be said to determine official policy; (3) that the custom amounted to at least deliberate indifference to Krell's constitutional rights; and (4) that the custom was the "moving force" behind the constitutional violation.  *See Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000).  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

It used to be the case in the Ninth Circuit that formulaic pleadings would satisfy these "rigorous standards."  But, as the Ninth Circuit explained in *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012), the *Iqbal* decision transformed the previously permissive standards for pleading section 1983 municipal liability claims in the Ninth Circuit.  Now, a plaintiff making a *Monell* claim (1) must make "sufficient allegations of underlying facts" and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief."  *Id.* at 636 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  For example, in *Starr v. Baca*, the plaintiff was able to satisfy the *Iqbal* pleading standard in a section 1983 case claiming supervisory liability where (1) the plaintiff "specifically allege[d] numerous incidents" similar to his own and alleged specific facts about each, and (2) the sheer number of incidents alleged made it "plausible" that there was not an "obvious alternative explanation" for the challenged supervisorial conduct.  652 F.3d at 1216.

Krell's complaint fails the *Iqbal* pleading standard, when it comes to showing the existence of a custom, deliberate indifference, or causation of a violation.[2]

Under the first prong of *Iqbal*, Krell does not allege sufficient underlying facts to support his claim that San Francisco has a policy or custom.  Krell makes the conclusory allegation that San Francisco has "an official, de facto policy of discrimination against persons who are not politically connected and/or against persons who complain about or protest unlawful/illegal conduct by City

---

[2] Part II below addresses the first element of liability – whether the facts pled show a deprivation of any constitutional right.  As discussed below, Krell fails that test as well as to each of the alleged deprivations.

1  employees." *Id.* ¶ 16.  Krell also offers several formulaic allegations of supposed municipal customs

2  and policies, offered on "information and belief."  Complaint ¶¶ 13-25.  These allegations do not pass

3  the test, because they are nothing more than "'naked assertion[s]' devoid of 'further factual

4  enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557, alteration in *Iqbal*).

5       Once these formulaic allegations are discounted, the Complaint states *no* facts to support the

6  claim of a municipal custom.  The only instance of discrimination alleged is Krell's own – and that is

7  inadequate to show a de facto policy or custom.  "Liability for improper custom may not be predicated

8  on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency

9  and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v.*

10  *Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Gant v. County of Los Angeles*, 772 F.3d 608, 618 (9th Cir.

11  2014) (finding that a plaintiff failed to establish *Monell* liability when he "did not meet his burden of

12  showing that [his] mistaken arrest was more than a single, 'isolated or sporadic' incident").  The law is

13  well-established that a custom or practice cannot be inferred absent evidence of a widespread pattern

14  of constitutional violations.  *See Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443-44 (9th Cir.

15  1989), *overruled on other grounds*, *Bull v. City and County of San Francisco*, 595 F.3d 964, 981 (9th

16  Cir. 2010) (en banc).  Unlike the plaintiff in *Starr* whose complaint survived a motion to dismiss, Krell

17  has not alleged and specifically described several other specific incidents to support his claims of

18  municipal liability for any constitutional violation.  And the Complaint contains no facts that would

19  support an inference of bad intent on the part of San Francisco policymakers.

20       Thus, the Complaint cannot possibly satisfy the second prong of *Iqbal*: "plausibility."  Because

21  the Complaint contains no cognizable facts to support a claim of municipal custom, it is not plausible

22  that any unconstitutional custom existed, or that any unconstitutional custom caused the inspections of

23  Krell's parking lot and related enforcement actions.  Nor is it plausible that policymakers had any of

24  the motives that Krell's conclusory pleadings allege.

25  **II.    Alternatively, San Francisco is not liable under section 1983 because Krell does not plead
       sufficient facts to support any of his several constitutional claims.**

26

27       Even if Krell had properly pled the custom element of a *Monell* claim against the City, which

28  he did not, he fails to plead facts to support an underlying violation of his constitutional rights.

### A.   Krell has no Fourth Amendment claim arising from searches of other persons.

The only claim of an unlawful search or seizure in the Complaint is that on February 10, 2015 San Francisco employees "unlawfully searched persons working at the lot."  Complaint ¶ 33.  That claim fails for two reasons.  First, Krell cannot sue to enforce other persons' Fourth Amendment rights.  "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969).  "Thus, the general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights."  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).  Second, the Fourth Amendment claim fails because no facts are pled to show that the alleged searches were unlawful.  Krell's conclusory claim that there were unlawful searches, "devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), is not enough to satisfy *Iqbal*.

### B.   Krell cannot make out a Fourteenth Amendment due process violation, because California law provides adequate due process.

Krell alleges that his Fourteenth Amendment rights were violated because the City's enforcement actions were accompanied by inadequate due process.  Complaint ¶¶ 38, 41.  But "[w]hen state remedies are adequate to protect an individual's procedural due process rights, a section 1983 action alleging a violation of those rights will not stand."  *Brogan v. San Mateo County*, 901 F.2d 762, 764 (9th Cir. 1990).  As discussed above, *supra* Background Part I, adequate state law remedies exist for parking operators subject to enforcement actions.  The administrative citations of which Krell complains are subject to administrative and judicial review.  S.F. Tax Code art. 6, § 6.19-8 (administrative review); *id.* art. 6, § 6.19-10 (incorporating judicial review provisions of Cal. Gov. Code § 53069.4).  That same review process also provides redress for the complained-of delays in Krell's receipt of a certificate of authority.  That is because the COA requirement is enforced by the administrative citation system.  S.F. Tax Code art. 6, § 6.19-3 ($500 penalty for failure to obtain or post a COA).  If Krell receives a citation for failure to obtain a COA, but he has otherwise met the requirements to receive a certificate of authority under S.F. Code art. 6, § 6.6-1(f), Krell could certainly raise that as a defense to any administrative citation, whether during the administrative process or during judicial review.

**C.    Krell's Fourteenth Amendment equal protection claim fails because he does not plead facts to support a claim of discriminatory enforcement based on whether a parking operator is "politically connected."**

Krell claims that his Fourteenth Amendment equal protection rights were violated, because authorities engaged in "selective prosecution."  Complaint ¶ 37.  The alleged basis to prosecute Krell was that he is a member of a class that "is not politically connected."  *Id.* ¶ 15.

An equal protection claim based on membership in a class that is not suspect – like the class alleged by Krell – is subject to rational basis review.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008).  Admittedly, it would be irrational to enforce the tax laws only against those who are not politically connected.  But that alone does not mean that Krell has adequately pled his claim.

Rather, Krell fails to properly plead an equal protection claim under the first prong of *Iqbal*, because he pleads no facts to support a claim of selective enforcement.  Krell simply pleads the ultimate conclusion that this is what San Francisco does.  Complaint ¶ 16.  But under *Iqbal*, this is not nearly enough to make out a selective enforcement claim.  *See Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012) (stating that a plaintiff claiming an equal protection violation based on selective enforcement must "allege some facts, either anecdotal or statistical, demonstrating that 'similarly situated defendants … could have been prosecuted, but were not'" (quoting *United States v. Armstrong*, 517 U.S. 456, 469 (1996)).  What is missing from Krell's Complaint are facts of (1) other instances of discriminatory enforcement of parking tax laws against similarly situated parking operators who are not politically connected, and (2) instances of non-enforcement against similarly situated parking operators who *are* politically connected.  Without such facts, Krell's claim fails.  And because Krell pleads no facts on the first prong of *Iqbal*, his claim fails the "plausibility" test on the second prong.

**D.    Krell's First Amendment retaliation claim against San Francisco fails because the facts pled support an "obvious alternative explanation" for the actions that Krell attacks – and do not make a retaliatory motive plausible.**

Krell attributes all of the enforcement actions against him to an argument that he had with one tax investigator, Adrian Giannini, about where Giannini parked his vehicle during a lot inspection.  There is a real question whether this single minor dispute could plausibly give rise to a retaliatory motive on the part of Giannini.  After all, tax investigators must have thick skins to deal with the abuse

that some disgruntled taxpayers heap on them in response to routine enforcement efforts; a single spat about a parking space hardly bears mention.  Thus, it is of doubtful plausibility whether Giannini himself harbored a burning vendetta against Krell.

But it is completely implausible to impute such vindictive motives to San Francisco's policymaker – which is what is required to hold San Francisco itself liable under *Monell*.[3]  Here, it is silly to suppose that the Treasurer of the City and County of San Francisco would embark on a campaign of retribution against a small parking operator based on a single argument with a subordinate.  It is not plausible that the Treasurer would take a special and vindictive interest in Krell based on such a minor event.  It is not enough for a plaintiff to establish a merely "possible" entitlement to relief; the plaintiff must establish a "plausible" one.  *Id.* at 997 (quoting *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013)).  Krell has not done so here.

Moreover, it is significant that based on the facts pled by Krell, there are obvious alternative explanations for the various tax enforcement actions that Krell claims were retaliatory.  After all, the *Iqbal* "plausibility" standard applies with special force to cases requiring proof that decisionmakers acted based on an improper motive – that being the very scenario in *Iqbal*.  Thus, in the wake of *Iqbal*, the Ninth Circuit has explained that in cases alleging that defendants took actions based on improper motives, when "considering plausibility, courts must also consider an 'obvious alternative explanation' for defendant's behavior."  *Eclectic Properties East, LLC*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 682).  Here, there are completely innocuous and "obvious alternative explanation[s]" for the tax enforcement actions involving Krell, besides retaliation:

- The very first enforcement effort alleged by Krell was when Giannini drove into Krell's lot to investigate it – an effort that led to the alleged spat about where Giannini parked his car.  Complaint ¶¶ 28-30.  Giannini's decision to investigate Krell, of course, could not have been based on a retaliatory motive on the part of anyone, because Krell and Giannini had not yet had

---

[3] For the reasons already explained above, San Francisco cannot be held liable for any of Krell's federal constitutional claims – including the First Amendment retaliation claim – because there are no facts pled to show a custom on the part of policymakers.  The arguments here in this Section II.D. on the merits of the First Amendment allegations are – like the other merits arguments in Part II – simply additional reasons why Krell cannot prevail on his federal constitutional claims.

1   any argument.  Rather, the "obvious alternative explanation" for Giannini's initial visit was

2   that it was simply one of the "periodic inspections of Parking Stations to ensure that Parking

3   Stations have operational RCE [revenue control equipment] that meets the requirements" of

4   S.F. Tax Code article 22.  S.F. Tax Code art. 22, § 2216.

5   • Krell also notes inspections of his lot on at least two occasions, where uniformed SFPD

6   officers were present, and during which photographs were taken and demands were made to

7   count and see the money collected by Krell's "agents," at a time when the lot was busy.  Krell

8   alleges that "[c]learly, these raids were staged to get maximum shock value and to intimidate

9   persons working for Plaintiff."  Complaint ¶ 31.  But the "obvious alternative explanation" for

10  the presence of uniformed San Francisco police officers is that the San Francisco Police Code

11  has its own set of permitting requirements for parking operators, S.F. Police Code art. 17, §§

12  1215-1215.7.  *See* Request for Judicial Notice, Exh. E.  Those requirements are enforced by

13  San Francisco police officers, and a parking operator must make its business "records available

14  for inspection and copying during business hours on demand of any peace officer." *Id.* §

15  1215.5(e).  And there is also an "obvious alternative explanation" for Tax Collector

16  investigators photographing vehicles at Krell's lot and demanding to see money collected.

17  Namely, investigators are responsible for "inspect[ing] Parking Stations, RCE, RCE Records,

18  and books of account to ensure that an Operator is in compliance with this Article, that all

19  required RCE is functioning as required by this Article, and that Rent and Parking Taxes are

20  accurately reported and collected."  S.F. Tax Code art. 22, § 2225.  Making an objective

21  photographic report of how many vehicles have parked, and counting the money received, are

22  sensible methods to "ensure … that Rent and Parking Taxes are accurately reported and

23  collected." *Id.*

24  • Krell also complains of delays in issuing his required Certificate of Authority for 2015.

25  Complaint ¶ 33.  But Krell himself pleads facts that provide an "obvious alternative

26  explanation" why the Tax Collector has not issued him a Certificate of Authority for 2015:

27  Krell was issued a citation on February 10, 2015 for five different violations of the S.F. Tax

28  Code. *Id.* ¶¶ 33-34; Request for Judicial Notice, Exh. D (copy of citation).  Noncompliance

with the S.F. Tax Code is a sufficient ground for not issuing a COA.  S.F. Tax Code art. 6, §
6.6-1(f)(1) (Tax Collector may refuse to issue a COA to an operator who is "not in compliance
with any provision of the Business & Tax Regulations Code").  Indeed, noncompliance with
article 22 in particular (the article that spells out requirements for revenue control equipment)
makes it impossible for the Tax Collector to issue a COA.  *See id.* § 6.6-1(m) ("Before any
certificate of authority shall be issued to any applicant to engage in the business of renting
parking space in a parking station in this City, the applicant shall comply with Article 22.").
And the citation shows that Krell violated article 22.  Krell acknowledges an administrative
appeal process for that citation that he did not allege pursuing – instead, he calls the appeal
process a "sham."  Complaint ¶ 34.  Where Krell himself has pled facts that show a proper
basis for the Tax Collector's denial of a COA – a citation for outstanding violations of the S.F.
Tax Code, including violations of article 22 – he has confirmed an "obvious alternative
explanation" for that action, and it is not plausible to claim discrimination.

- The same "obvious alternative explanation" that applies to the February 10, 2015 citation
applies with equal force to the other unspecified citations of which Krell complains.
Complaint ¶¶ 32-33.  Namely, the validity of a citation is an "obvious alternative explanation"
for issuing it.  Here, Krell does not even purport to allege that any of these citations were
issued without probable cause – nor, as a matter of law, could he properly allege that the
citations were invalid.  That is because, again, Krell alleges an appeal process but then fails to
allege that he exhausted his administrative remedies and sought judicial review of these
citations.  Where a person does not avail himself of the prescribed administrative remedy and
then the prescribed judicial remedy, an administrative action is conclusively valid as a matter
of California law.  *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (explaining that
under California law, failure to exhaust administrative remedies *or* to exhaust the prescribed
judicial remedy means that the validity of agency action is conclusively established).  That
matters because, as a matter of full faith and credit, federal courts like this Court must give the
same effect to a state administrative determination as would state law.  *University of Tennessee
v. Elliott*, 478 U.S. 788, 798-99 (1986); *Misischia v. Pirie*, 60 F.3d 626, 629 (9th Cir. 1995)

1  (holding that failure to judicially challenge administrative determination precludes 42 U.S.C.

2  § 1983 civil rights action, and explaining "We accord preclusive effect to state administrative

3  adjudications of legal as well as factual issues."). Therefore, Krell cannot challenge these

4  citations as invalid (and any pleading to that effect must be disregarded). The validity of these

5  citations would be an "obvious alternative explanation" for the citations having been issued.

6  • Finally, Krell attaches special significance to how his administrative citations were publicized,

7  pleading that they "were taped in a very obvious manner, across Plaintiff's door, at 345 Grove

8  Street, highly visible and embarrassing." Complaint ¶ 32. But the "obvious alternative

9  explanation" for that action was to accomplish *service* of the administrative citations. Here,

10  the S.F. Code provides for serving administrative citations "by affixing the citation to a surface

11  in a conspicuous place on the property." *Id.* art. 6, § 6.19-6.

12  In sum, Krell "has not 'nudged [his] claims' of invidious discrimination 'across the line from

13  conceivable to plausible.'" *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570, alteration in

14  *Iqbal*).

15  **III.    Krell's California law claim is barred by state law immunities.**

16      Krell makes a claim for state law negligence against San Francisco. But two different

17  governmental immunities are a complete bar to his state law claims – the immunity for instituting or

18  prosecuting judicial or administrative proceedings under Government Code section 821.6, and the

19  immunity for actions to enforce tax obligations under Government Code section 860.2. And

20  supposing that one or both of these overarching immunities did not shield all of the conduct alleged

21  here, other specific state law immunities supply redundant protections for several of the specific

22  challenged actions. Cal. Gov. Code §§ 818.4, 821.2 (immunity for decisions whether to issue permits

23  and certificates); *id.* § 821.8 (immunity for entry onto property). All of these immunities protect the

24  City itself, not just its employees. Cal. Gov. Code § 815.2.

25      **A.    Government Code section 821.6 bars all of Krell's state law claims because the
26      challenged enforcement actions were all incident to administrative proceedings
       against Krell.**

27      Government Code section 821.6 is a far-reaching immunity that poses a complete bar to Krell's

28  state law claims. That section states in its entirety:

---

Defts Motion to Dismiss                                        15                              n:\taxlit\li2015\151258\01018069.doc
CASE NO.   **15-cv-01833KAW**

> A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Cal. Gov. Code § 821.6.

The Legislature enacted section 821.6 in order to "free[] investigative officers from the fear of retaliation for errors they commit in the line of duty." *Baughman v. State of California,* 38 Cal. App. 4th 182, 193 (1995).  In enacting such a broad immunity, the Legislature balanced the need for impartial and vigorous enforcement of the laws against the need for a civil damages remedy for misguided enforcement – and resolved that balance in favor of immunity.  *Amylou R. v. County of Riverside,* 28 Cal. App. 4th 1205, 1212-13 (1994).  Thus, this immunity applies whether officials allegedly "acted negligently, maliciously or without probable cause in carrying out their duties." *Baughman*, 38 Cal. App. 4th at 192; Gov. Code § 821.6.  The immunity is broad, applying not just to legally trained prosecutors but to any public employee involved in instituting or prosecuting investigations or proceedings.  *Asgari v. City of Los Angeles,* 15 Cal. 4th 744, 756-57 (1997); *Javor v. Taggart,* 98 Cal. App. 4th 795, 809 (2002); *Paterson v. City of Los Angeles*, 174 Cal. App. 4th 1393, 1405 (2009).  Furthermore, where a public employee is immune from liability, the public entity employer is also immune.  Cal. Gov. Code § 815.2; *Amylou R.,* 28 Cal. App. 4th at 1208-09.

Section 821.6 immunity is a complete bar to liability for all of the conduct that Krell attacks, regardless whether the conduct was malicious, negligent, or otherwise wrongful:

- Most obviously, the immunity applies to the decision to issue administrative citations, because issuing an administrative citation "institut[es]" an "administrative proceeding."  Cal. Gov. Code § 821.6; *see, e.g.*, *Ross v. San Francisco BART*, 146 Cal. App. 4th 1507, 1516 (2007) (immunity for retaliatory administrative proceedings).

- The immunity applies to all actions taken by City employees while investigating Krell.  Under California law, the immunity "extends to actions taken in preparation for formal proceedings.  Because investigation is an 'essential step' toward institution of formal proceedings, it 'is also cloaked with immunity.'" *Amylou R.*, 28 Cal. App. 4th at 1209 (quoting *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1436-1437 (1988)); *Baughman*, 38 Cal. App. 4th at 192.  Thus, the immunity bars Krell's claim that City employees' decisions during the investigation

damaged his business or were otherwise embarrassing. *See, e.g.*, *Amylou R.*, 28 Cal. App. 4th at 1212 (immunity for negligent conduct during investigation).

- The immunity applies to City employees' publicizing the proceedings against Krell. *See, e.g.*, *All Angels Preschool/Daycare v. County of Merced*, 197 Cal. App. 4th 394, 408 (2011) (§ 821.6 immunity for publicizing report of investigation even where publication breached confidentiality statute); *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (1999) (employee's statements to press immunized, even though no prosecution actually occurred).

- Because Krell claims that the delay of his certificate of authority was caused by the citations, that claim is subject to the immunity. *Cf. Citizens Capital Corp. v. Spohn*, 133 Cal. App. 3d 887, 889 (1982) (section 821.6 immunity for proceedings related to license revocation).

Thus, section 821.6 is a complete bar to Krell's state law claims.

**B.  Separately, Government Code section 860.2 also bars all of Krell's state law claims because the challenged actions stem from administrative proceedings "incidental to ... collection of a tax" or otherwise from "the application of any law relating to a tax."**

To ensure that the threat of liability does not deter officials from securing the tax revenue necessary to provide essential services, the California Legislature has immunized tax collection activities from liability. Section 860.2 of the Government Code provides: "Neither a public entity nor a public employee is liable for an injury caused by: (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax. (b) An act or omission in the interpretation or application of any law relating to a tax." Cal. Gov. Code § 860.2. This immunity applies to both discretionary and ministerial actions in connection with tax enforcement. *Mitchell v. Franchise Tax Bd.*, 183 Cal. App. 3d 1133, 1137 (1986). That immunity is a complete bar to Krell's claims. Both subdivision (a) and subdivision (b) apply here.

In analyzing how subdivision (a) applies here, two points are significant. First, subdivision (a) of section 860.2 immunizes tax authorities from liability for instituting administrative proceedings incidental to tax collection – and it uses language similar to that used in section 821.6, *see supra* Section III.A. And just as courts have read section 821.6 to immunize not just a proceeding but also activities related to the proceeding – like investigation and publicity – it is appropriate to read section

860.2 to broadly immunize those activities.  Second, subdivision (a) immunizes not just tax collection, but proceedings "incidental to" tax collection.  Here, the requirements of the S.F. Code that officials applied to Krell are incidental to tax collection, because they insure proper tax collection.  *Cf. Ainsworth v. Bryant*, 34 Cal. 2d 465, 476 (1949) (explaining that San Francisco's requirements that a retailer "register with the tax collector, procure a certificate of authority to collect the tax, and display it prominently in his store" were "reasonably adapted to insure the collection and proper remission of the tax").  Applying those principle to this case, subdivision (a) of section 860.2 immunizes San Francisco's investigation of Krell, its citations, and the publicity incident to those proceedings.  Similarly, where the delay in Krell's COA is attributable to issuance of citations, that conduct is immunized.

Moreover, subdivision (b) of section 860.2 broadly immunizes tax authorities for "an act or omission in the interpretation or application of any law relating to a tax."  That provision applies to all of Krell's claims here, because Krell's allegations concern the application of the S.F. Tax Code to him.  For example, whether or not Krell was entitled to a Certificate of Authority involves the "application of any law relating to a tax."  Similarly, citations were issued as part of the "application of any law relating to a tax."

## C.  Additional state law immunities provide redundant protections for San Francisco.

Though the City is protected from liability under the ironclad immunities of Government Code section 821.6 and Government Code section 860.2, other immunities also apply.

The Government Code confers immunity for issuing (or not issuing) "any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."  Cal. Gov. Code § 818.4 (entity immunity); *see also id.* § 821.2 (parallel immunity for public employees).  The immunity also protects decisions to delay the issuance of a permit.  *Thompson v. City of Lake Elsinore*, 18 Cal. App. 4th 49, 56 (1993).  The immunity applies when discretion exists.  *Id.*  Moreover, it applies regardless whether animus affected the exercise of discretion.  *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 811 (9th Cir. 2007) ("While the record suggests that the denial of Kay's permit may have been driven at least in part by

1   animus on the part of City officials, the record also shows that the City was exercising its discretion as

2   part of its planning and administrative duties.").  The immunity applies here because the Tax Collector

3   had discretion here to deny the Certificate of Authority.  The S.F. Code provides that the Tax Collector

4   "*may* refuse to issue the certificate where … the Tax Collector determines that the operator … is not in

5   compliance with any provision of the Business & Tax Regulations Code."  S.F. Tax Code § 6.6-1(f)(1)

6   (emphasis added).  As already discussed above, the issuance of citations to Krell gave the Tax

7   Collector discretion to delay the 2015 COA.

8           In addition, the City cannot be liable for investigators and police officers entering Krell's

9   property, under Government Code 821.8, which provides in relevant part that a "public employee is

10  not liable for an injury arising out of his entry upon any property where such entry is expressly or

11  impliedly authorized by law."  Cal. Gov. Code § 821.8; *Ogborn v. City of Lancaster*, 101 Cal. App.

12  4th 448, 464 (2002) (immunity applies to entity as well under Cal. Gov. Code § 815.2(b)).  Here, the

13  investigators' and officers' entry was authorized by the inspection provisions of the S.F. Tax Code.

14  S.F. Tax Code art. 22, §§ 2216, 2225.  Given that authorization, there is no liability for entering

15  Krell's lot.  *Cowing v. City of Torrance*, 60 Cal. App. 3d 757, 763-64 (1976) ("A licensed inspector

16  has authority to enter business premises to carry out the policing of reasonable revenue regulations.").

17                                          **CONCLUSION**

18          For all of the foregoing reasons, San Francisco respectfully requests that the Court dismiss

19  Krell's Complaint in its entirety.

20  Dated:  June 1, 2015

21                                  DENNIS J. HERRERA
                                    City Attorney
22                                  CHERYL ADAMS
                                    Chief Trial Deputy
23                                  PETER J. KEITH
                                    Deputy City Attorney
24

25                          By:  */s/ Peter J. Keith*
                                    PETER J. KEITH
26

27                                  Attorneys for Defendant
                                    CITY AND COUNTY OF SAN FRANCISCO
28