DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
PETER J. KEITH, State Bar #206482
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:      (415) 554-3908
Facsimile:      (415) 554-3837
E-Mail:         peter.keith@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE KRELL,<br><br>              Plaintiff,<br><br>    vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, OFFICER BEL GELASIO, (#20), OFFICE OF THE TREASURE AND TAX COLLECTOR, RON MEUNIER (#14), OFFICER CHARLES SMITH, OFFICER ADRIAN GIANINI, and DOES 1-40,<br><br>              Defendants. | Case No. 15-cv-01833 KAW<br><br>**CITY AND COUNTY OF SAN FRANCISCO'S SPECIAL MOTION TO STRIKE PLAINTIFF'S STATE LAW CAUSE OF ACTION AND FOR ATTORNEYS' FEES UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:     August 6, 2015<br>Time:             11:00 a.m.<br>Judge:            Hon. Kandis A. Westmore<br>Place:            Courtroom 4, 3d floor, 1301 Clay Street, Oakland, CA<br><br>Trial Date:       None |

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION & SUMMARY OF ARGUMENT ..................................................................... 1

BACKGROUND ............................................................................................................................. 3

     I.     San Francisco's Parking Tax Enforcement Provisions ............................................ 3

     II.    Plaintiff's Claims .................................................................................................... 5

ARGUMENT .................................................................................................................................. 7

     I.     California's anti-SLAPP statute provides for dismissal of meritless state law claims arising from a defendant's engaging in petitioning and free speech – including public entities and employees who initiate official proceedings and publicize allegations of wrongdoing. ................................................................. 7

     II.    Initially, Krell's state law claim arises from activity protected by two different provisions of the anti-SLAPP statute. ..................................................................... 9

          A.    The tax investigators' citations were "writing[s] made in connection with … any official proceeding authorized by law" – exercises of the right to petition protected under section 425.16(e)(2). .............................. 9

          B.    Separately, Krell's suit arises from "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" – speech protected under section 425.16(e)(3). ..................................................................... 10

     III.   Krell's California law claim is barred by state law immunities ............................ 12

          A.    Government Code section 821.6 bars all of Krell's state law claims because the challenged enforcement actions were all incident to administrative proceedings against Krell. ................................................. 12

          B.    Separately, Government Code section 860.2 also bars all of Krell's state law claims because the challenged actions stem from administrative proceedings "incidental to ... collection of a tax" or otherwise from "the application of any law relating to a tax." ................................................. 14

          C.    Additional state law immunities provide redundant protections for San Francisco. ................................................................................................. 15

     IV.   San Francisco is entitled to attorneys' fees for this special motion to strike. ........ 16

CONCLUSION ............................................................................................................................. 17

## **TABLE OF AUTHORITIES**

**Cases**

*Abelleira v. District Court of Appeal*
    17 Cal. 2d 280 (1941) ........................................................................11

*All Angels Preschool/Daycare v. County of Merced*
    197 Cal. App. 4th 394 (2011) ...........................................................13

*Amylou R. v. County of Riverside*
    28 Cal. App. 4th 1205 (1994) ...........................................................13

*Asgari v. City of Los Angeles*
    15 Cal. 4th 744 (1997) ......................................................................13

*Baughman v. State of California*
    38 Cal. App. 4th 182 (1995) .......................................................12, 13

*Bernardo v. Planned Parenthood Fed. of Am.*
    115 Cal. App. 4th 332 (2004) ...........................................................16

*Bradbury v. Superior Court*
    49 Cal. App. 4th 1108 (1996) .............................................................8

*Briggs v. Eden Council for Hope & Opportunity*
    19 Cal. 4th 1106 (1999) ......................................................................8

*Brill Media Co., LLC v. TCW Group, Inc.*
    132 Cal. App. 4th 324 (2005) .............................................................8

*Cf. Ainsworth v. Bryant*
    34 Cal. 2d 465 (1949) .......................................................................14

*Cf. Citizens Capital Corp. v. Spohn*
    133 Cal. App. 3d 887 (1982) ............................................................14

*Cowing v. City of Torrance*
    60 Cal. App. 3d 757 (1976) ..............................................................16

*Dove Audio, Inc., v. Rosenfeld, Meyer & Susman*
    47 Cal. App. 4th 777 (1996) .........................................................7, 10

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*
    29 Cal. 4th 53 (2002) .....................................................................7, 9

*Ingram v. Flippo*
    74 Cal. App. 4th 1280 (1999) ...........................................................13

*Javor v. Taggart*
    98 Cal. App. 4th 795 (2002) .............................................................13

Defts Special Motion to Strike
CASE NO.   **15-cv-01833KAW**
      ii
      n:\taxlit\li2015\151258\01018074.doc

*Johnson v. City of Loma Linda*
   24 Cal. 4th 61 (2000) ...............................................................................11

*Kay v. City of Rancho Palos Verdes*
   504 F.3d 803 (9th Cir. 2007) ....................................................................15

*Kemmerer v. County of Fresno*
   200 Cal. App. 3d 1426 (1988) ...................................................................13

*Ludwig v. Superior Court*
   37 Cal. App. 4th 8 (1995) .........................................................................10

*Mitchell v. Franchise Tax Bd.*
   183 Cal. App. 3d 1133 (1986) ...................................................................14

*Navellier v. Sletten*
   29 Cal. 4th 82 (2002) .................................................................................1

*Nygard, Inc. v. Uusi-Kerttula*
   159 Cal. App. 4th 1027 (2008) .................................................................10

*Ogborn v. City of Lancaster*
   101 Cal. App. 4th 448 (2002) ...................................................................16

*Paterson v. City of Los Angeles*
   174 Cal. App. 4th 1393 (2009) .................................................................13

*Rosenthal v. Great Western Fin. Securities*
   14 Cal. 4th 394 (1996) ...............................................................................9

*Ross v. San Francisco BART*
   146 Cal. App. 4th 1507 (2007) .................................................................13

*Schaffer v. City and County of San Francisco*
   168 Cal. App. 4th 992 (2008) ...............................................................8, 10

*Thompson v. City of Lake Elsinore*
   18 Cal. App. 4th 49 (1993) .......................................................................15

*Tuchscher Dev. Enter. v. San Diego Unified Port Dist.*
   106 Cal. App. 4th 1219 (2003) ...................................................................9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*
   190 F.3d 963 (9th Cir. 1999) ......................................................................7

*Vogel v. Felice*
   127 Cal. App. 4th 1006 (2005) ...................................................................8

*Westinghouse Elec. Corp. v. County of Los Angeles*
   42 Cal. App. 3d 32 (1974) .......................................................................11

*Wilcox v. Superior Court*
   27 Cal. App. 4th 809 (1994) ...................................................................7

*Wilson v. Parker, Covert & Chidster*
   28 Cal. 4th 811 (2002) ...........................................................................9

**State Statutes & Codes**
California Code of Civil Procedure § 425.16 ...............................1, 2, 7, 8, 9, 10, 11, 16

California Government Code § 818.4 ...................................................12, 15

California Government Code § 815.2 ..............................................12, 13, 16

California Government Code § 821.2 ...................................................12, 15

California Government Code § 821.6 ........................................2, 12, 13, 14, 15

California Government Code § 821.8 ...................................................12, 16

California Government Code § 860.2 ..............................................3, 12, 14, 15

California Government Code §53069.4 ...................................................5, 9

**San Francisco Statutes, Codes & Ordinances**
San Francisco Tax Code article 6 .............................................3, 4, 5, 6, 7, 9

San Francisco Tax Code article 9 ...........................................................3

San Francisco Tax Code article 22 ..........................................3, 4, 6, 7, 16

**NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFFS'
STATE LAW CAUSE OF ACTION AND FOR ATTORNEYS' FEES UNDER CALIFORNIA'S
ANTI-SLAPP STATUTE (CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16)**

Please take notice that on August 6, 2015, at 11:00 a.m., before the Honorable Kandis A.
Westmore, in Courtroom 4, Third Floor at U.S. District Court, 1301 Clay Street in Oakland,
California, or as soon thereafter as this matter can be heard, Defendant City and County of San
Francisco (San Francisco or the City) will and hereby does move to strike Plaintiff's Fourth Cause of
Action for negligence under California law, under California Code of Civil Procedure § 425.16
(hereafter, "Section 425.16"), a statute commonly known as California's anti-SLAPP statute.[1]

San Francisco is entitled to have this state law cause of action stricken from the Complaint
because it arises out of conduct protected by the anti-SLAPP statute.  San Francisco is also entitled to
all attorneys' fees and costs incurred in the course of bringing the instant motion, namely for
$12,255.00 plus all fees that may be incurred through the date of arguing this motion.  This motion to
dismiss is based on this Notice Of Special Motion and Special Motion To Strike Plaintiff's State Law
Claims, the supporting Memorandum of Points and Authorities, the accompanying Request for
Judicial Notice, the Declaration of Peter J. Keith in support, all filed or lodged herewith, as well as the
file in this case, the argument of counsel at the hearing, and any such further matters as the Court
deems appropriate.

## MEMORANDUM OF POINTS AND AUTHORITIES
### INTRODUCTION & SUMMARY OF ARGUMENT

San Francisco imposes a tax on paid parking and requires parking operators to collect the
parking tax from their customers and remit those funds to the Tax Collector.  To ensure proper
revenue collection, San Francisco has enacted several ordinances imposing requirements on parking
operators.  These ordinances, contained in the San Francisco's Business & Tax Regulations Code (S.F.
Tax Code), are enforced through various certificate requirements as well as citations for violators.
Those citations can be appealed administratively and are subject to judicial review in California courts
at reduced cost.

---

[1] "SLAPP" is an acronym for "strategic lawsuit against public participation."  *Navellier v.
Sletten*, 29 Cal. 4th 82, 85 & n.1 (2002).

Plaintiff Bruce Krell operates a small outdoor parking lot in San Francisco.  Krell alleges that San Francisco began to enforce the S.F. Tax Code against his parking lot after he got into an argument with individual defendant Adrian Giannini.  Krell alleges that he was singled out as a result of this argument, and as a result of Krell's not being "politically connected."  Krell faults San Francisco for deciding to investigate him, for initiating administrative enforcement proceedings through administrative citations, and publicizing those proceedings to his detriment.  Among other things, tax officials posted the citations of Krell "in a very obvious manner, across Plaintiff's door, at 345 Grove Street, highly visible and embarrassing."  Complaint ¶ 32.  As a consequence of these citations, San Francisco delayed approval of Krell's Certificate of Authority to collect parking taxes (COA), a certificate that parking operators like Krell are required to hold under the San Francisco Tax Code – a requirement that is enforced under penalty of receiving further administrative citations.

Krell's complaint contains federal and California law claims; as relevant to this anti-SLAPP motion, Krell asserts one California law cause of action – the Fourth Cause of Action, for negligence.  This state law claim should be stricken pursuant to California's anti-SLAPP statute, for two different reasons.  First, each of the citations of which Krell complains were exercises of the right to petition within the scope of section 425.16(e)(2), which protects "any written or oral statement or writing made in connection with . . . any official proceeding authorized by law."  Second, Krell faults the Tax Collector for posting these citations in a public place, where everyone could see he was being cited for violation of San Francisco tax laws – allegations that plainly transgress the speech protections of section 425.16(e)(3), which shields "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."  The showing that the conduct here is protected by any provision of the anti-SLAPP statute – and here, *two* provisions apply – shifts the burden to Krell to establish a probability that he will prevail on the merits.  Cal. Code Civ. Proc. § 425.16(b)(1).

Krell cannot meet his burden of showing a probability of success on the merits, because his state law claims are barred completely by governmental immunities.  Two such immunities each pose a complete bar to Krell's claims.  First, California Government Code section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting . . . any judicial . . . proceeding within

the scope of his employment, even if he acts maliciously and without probable cause," and this immunity also shields the City.  Second, Government Code section 860.2 completely shields tax authorities from damages claims.  And additional state law immunities provide redundant protections.

Finally, the anti-SLAPP statute mandates attorneys' fees for the City for the time spent on this motion.  To date, the City's fees and costs are well in excess of $12,255.00, and the Court should award that amount plus any supplemental amounts incurred in drafting the City's reply and preparing for and attending the hearing in this matter. [2]

## BACKGROUND

### I.    San Francisco's Parking Tax Enforcement Provisions

Krell's claims – and why the anti-SLAPP statute protects San Francisco – cannot be understood without some background about the legal framework for paid parking in San Francisco.  That framework is contained in San Francisco's Business & Tax Regulations Code (S.F. Tax Code).  *See* Request for Judicial Notice, Exh. A (S.F. Tax Code article 6), Exh. B (S.F. Tax Code article 9), Exh. C (S.F. Tax Code article 22).

San Francisco imposes a substantial tax of 25% on paid parking.  Under article 9 of the S.F. Tax Code, the parking tax is levied against customers.  S.F. Tax Code art. 9, §§ 602, 602.5.  But it is the parking operators who are obligated to actually collect that tax from their customers, *id.* art. 9, § 603, and then remit the funds to the Tax Collector on a monthly basis, along with monthly returns, *id.* art. 6, § 6.7-2.  The parking operators hold that revenue in trust for the City.  *Id.* art. 6, § 6.7-1.  That revenue ultimately goes to the City's general fund, and it may be spent for any public purpose.  S.F. Code art. 9, § 615.

---

[2] Much of the content of this anti-SLAPP motion duplicates San Francisco's motion to dismiss. For the sake of efficiency, we note that both motions contain a nearly identical "Background" portion and a nearly identical argument, in Part III of the Argument, regarding how Government Code immunities bar the California law claims.  What is different about this anti-SLAPP motion is Part I, Part II, and Part IV of the Argument:  Part I describes the burden-shifting framework under the anti-SLAPP statute; Part II discusses why the conduct alleged by Krell is protected by the anti-SLAPP statute; and Part IV discusses San Francisco's entitlement to attorneys' fees.  This anti-SLAPP motion does not discuss Krell's federal claims; the motion to dismiss does, in Part I and Part II of that motion.

Given the significant amount of public funds entrusted to parking operators – much of it received as cash – San Francisco strives to keep that revenue secure by imposing numerous requirements on parking operators.

Among other things, operators must obtain proper licenses and certificates from the Tax Collector.  As relevant here, article 6 of the S.F. Code requires operators to obtain a Certificate of Authority to collect parking tax (COA).  *Id.* art. 6, § 6.6-1(b).  To receive or renew a COA, an operator must meet several requirements.  The operator must post a bond in favor of the City.  *Id.* art. 6, § 6.6-1(h)-(k).  A COA, however, need not be issued if the operator is not fully compliant with all aspects of the S.F. Tax Code.  *Id.* art. 6, § 6.6-1(d), (f).  Indeed, a COA cannot be issued until an operator has installed appropriate revenue control equipment and has met the other requirements of article 22 of the S.F. Tax Code.  *Id.* art. 6, § 6.6-1(m).

Article 22 contains several additional requirements for parking operators.  Article 22 specifies the "revenue control equipment" (RCE) that operators must install in lots to accurately track revenue – and it imposes a wide range of technical requirements for RCE, depending on lot revenue and rate structures.  *Id.* art. 22, §§ 2203-2210.  Article 22 also requires operators to maintain auditable records, to accurately post their rates, and to inform the public of the right to receive a receipt.  *Id.* art. 22, §§ 2218, 2220.

Several provisions of the S.F. Tax Code confer authority on the Tax Collector's employees to conduct inspections to ensure compliance with the Code and to ensure accurate revenue reporting.  Inspection powers are extensive, with investigators having "authority to inspect Parking Stations, RCE, RCE Records, and books of account to ensure that an Operator is in compliance with this Article, that all required RCE is functioning as required by this Article, and that Rent and Parking Taxes are accurately reported and collected."  *Id.* art. 22, § 2225; *see also id.* art. 22, § 2216 (authority to periodically inspect parking stations).  Those inspections are conducted by Tax Collector investigators like the individual defendants here.

These permitting and other requirements are enforced by means of an administrative citation system.  The California Legislature has expressly authorized California cities to enforce their local laws through a process of administrative citation and administrative review, rather than through the

criminal law process.  Cal. Gov. Code §53069.4(a)(1) (local agency "may by ordinance make any violation of any ordinance enacted by the local agency subject to an administrative fine or penalty," which is subject to "administrative review by the local agency").  Under this authority, San Francisco enacted an administrative citation system to enforce several requirements of the S.F. Tax Code.  S.F. Tax Code art. 6, §§ 6.19-3 *et seq.*  The Code sets the monetary penalty depending on the violation, and it identifies which Tax Collector employees are empowered to issue citations.  *Id.* art. 6, § 6.19-3.  The Code provides for the information that is to be included in a citation, and how it is to be paid.  *Id.* art. 6, §§ 6.19-4, 6.19-5, 6.19-7.  Service of citations can involve "affixing the citation to a surface in a conspicuous place on the property."  *Id.* art. 6, § 6.19-6.  An operator who contends it complied with the Code may protest a citation by paying it under protest and filing an administrative appeal to the Tax Collector within 15 days.  *Id.* art. 6, § 6.19-8.  If the Tax Collector denies the protest, judicial review is available by way of an appeal to the Superior Court within 20 days of mailing of the Tax Collector's decision, with the Superior Court filing fee being only $25.00.  *Id.* art. 6, § 6.19-10 (incorporating judicial review provisions of Cal. Gov. Code § 53069.4).

## II.  Plaintiff's Claims

Plaintiff Bruce Krell is the operator of a small parking lot at 325 Grove Street in San Francisco. Complaint ¶ 26.  The lot provides paid parking, for professional workers during the day and to patrons of the performing arts in the evening.  *Id.* ¶ 3.  Krell never received any citations related to his lot before the events alleged in the Complaint.  *Id.* ¶ 4.  Krell is not politically connected.  *Id.* ¶ 15.

Krell alleges "on information and belief" that San Francisco has "an official, de facto policy of discrimination against persons who are not politically connected and/or against persons who complain about or protest unlawful/illegal conduct by City employees."  *Id.* ¶ 16.  There are several boilerplate allegations regarding supposed municipal customs and policies, offered on "information and belief." Complaint ¶¶ 13-25.  The Complaint, however, does not include any factual explanation.  The Complaint does not identify any other instances of discrimination, nor does it offer any facts about any instance of favorable treatment of a similarly situated parking operator who is politically connected.

As to Krell himself, the Complaint alleges that one evening about two years ago, Krell got into a confrontation with San Francisco employee Adrian Giannini.  Krell and Giannini argued about

Giannini driving his vehicle into Krell's lot and parking across two parking spaces that were to be used by theatergoers that evening.  Ultimately, Giannini relented and moved his vehicle.  Complaint ¶¶ 28-29.

Krell alleges that as a result of this argument with Giannini, "a pattern of harassment and retaliation ensued."  *Id.* ¶ 30.  That pattern consists of two inspections by San Francisco employees, an unspecified number of citations, the San Francisco Tax Collector delaying the issuing of a COA for 2014, and the Tax Collector's not yet issuing any COA for 2015.

Although the S.F. Tax Code confers authority to conduct inspections of parking stations, S.F. Tax Code art. 22, §§ 2216, 2225, Krell alleges that two inspections of his parking station were harassing, because they were conducted by Tax Collector employees and uniformed San Francisco police officers, who photographed the lot and demanded to see and count money collected by parking attendants during a busy theater evening when the lot was in operation.  Complaint ¶ 31.  Krell also alleges that unspecified individuals "unlawfully searched persons working at the lot," but Krell does not allege that he was one of the persons who was searched.  *Id.*  As to why the searches were unlawful, no facts are provided.  *Id.*

Krell alleges having received "retaliatory citations."  Krell does not allege, however, that any of these citations were issued without probable cause or legal basis.  And although Krell concedes that an appeal process exists for citations – which he calls a "sham" – he does not allege that he exhausted administrative remedies, he does not allege the result of any administrative appeal, and he does not allege the termination of any judicial action in his favor.  Complaint ¶ 34.

Krell also alleges as "harassing" that "when citations were issued, these were taped in a very obvious manner, across Plaintiff's door, at 345 Grove Street, highly visible and embarrassing."  Complaint ¶ 32.  (As noted above, the S.F. Tax Code provides for service of citations by posting them in a "conspicuous place."  S.F. Tax Code art. 6, § 6.19-6.)

Krell also complains of delays in issuing his Certificate of Authority.  Krell alleges that he has posted the required bond and "maintained required records" to obtain a COA.  Complaint ¶ 27.  However, Krell does not allege that he has complied with all of the *other* requirements of the S.F. Tax Code, such as using the revenue control equipment required by article 22 of the S.F. Tax Code.  Krell

contends that approval of his 2015 COA was "delayed for specious reasons" – but he also alleges that one reason for the delay may be the citation he received on February 10, 2015.  Complaint ¶ 33.  That citation involved five violations: (1) failure to obtain or post a certificate of authority to collect third party taxes (violating S.F. Tax Code art. 6, § 6.6-1(d)); (2) failure of an operator in the business of renting parking space in a parking station to post a bond (violating S.F. Tax Code art. 6, § 6.6-1(h); (3) operating a parking station without utilizing RCE or business practices and procedures as required by article 22 (violating S.F. Tax Code art. 22, §§ 2203 *et seq.*); (4) failure to maintain RCE records as required by article 22 (violating S.F. Tax Code art. 22, § 2218); (5) failure to comply with any other obligation or duty imposed under the Business & Tax Regulations Code (violating S.F. Tax Code art. 22, section 2220, consumer protection).  *See* Request for Judicial Notice, Exhibit D (February 10, 2015 citation).[3]  Krell makes no allegation that he appealed this February 10, 2015 citation, instead alleging that the appeal process is a "sham" because appeal is made to the administrative agency. Complaint ¶ 34.

## ARGUMENT

Krell's state law claims should be stricken and fees and costs awarded to the City.

**I.**    **California's anti-SLAPP statute provides for dismissal of meritless state law claims arising from a defendant's engaging in petitioning and free speech – including public entities and employees who initiate official proceedings and publicize allegations of wrongdoing.**

Under California law, a defendant may file a special motion to strike under Code of Civil Procedure section 425.16 in response to a "meritless suit filed primarily to chill the defendant's exercise of First Amendment rights."  *Dove Audio, Inc., v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 783 (1996) (quoting *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 815 n.2 (1994)) (disapproved on other grounds in *Equilon Enterprises, LLC v. Consumer Cause, Inc.* 29 Cal. 4th 53, 68 n.5 (2002)).  A defendant in federal court may bring an anti-SLAPP motion to strike a plaintiff's meritless California law claims.  *See United States ex rel. Newsham v. Lockheed Missiles & Space Co*., 190 F.3d 963, 970-73 (9th Cir. 1999).

---

[3] The February 10, 2015 citation may be considered under the "incorporation by reference" doctrine, because the Complaint references the citation.  *Knievel v. ESPN*, 393 F.3d 1068, 1076-1077 (9th Cir. 2005).

Section 425.16 requires a two-step analysis by the Court, where the burden begins with the defendant but then shifts to the plaintiff.

First, the defendant bears the initial burden of showing that the suit arose from an act "in furtherance of the [movant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1). The statute treats that phrase as a term of art that includes, as relevant here, "any written or oral statement or writing made in connection with . . . any official proceeding authorized by law," *id.* § 425.16(e)(2), as well as "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," *id.* § 425.16(e)(3). "In determining whether a defendant sustained its initial burden of proof, the court relies on the pleadings and declarations or affidavits." *Brill Media Co., LLC v. TCW Group, Inc.,* 132 Cal. App. 4th 324, 330 (2005); Cal. Code Civ. Proc. § 425.16(b)(2).

In evaluating whether the defendant has met this burden, the anti-SLAPP statute is to be construed broadly. *Id.* § 425.16(a); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119-21 (1999). Public employees and public entities are included within the protection of the anti-SLAPP statute. *Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1113–1115 (1996). Thus, government employees (and their employer) are protected when the employees make statements and communications in connection with official proceedings, even if that is simply the employees' job responsibility. *Schaffer v. City and County of San Francisco*, 168 Cal. App. 4th 992, 1002-1004 (2008).[4]  The statute is also construed broadly to reach all sorts of legal theories a plaintiff might assert – it is not limited to cases involving express claims of "defamation" or "malicious prosecution." Rather, section 425.16 applies to all "causes of action, regardless of the underlying theories of recovery, insofar as they are 'based on an act in furtherance of the defendant's right of petition or free speech.'" *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1016 (2005) (striking claims for libel, false light invasion of privacy, intentional and negligent infliction of emotional distress and negligent damage to

---

[4] The moving defendant need not show that the action was filed with a specific, subjective intent to chill the exercise of First Amendment rights. *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002).  Nor does the moving defendant have to show that the lawsuit has had the actual effect of chilling First Amendment rights. *Id.  See also City of Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002).

reputation); *Tuschscher Dev. Enter. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1232 (2003) ("The statute's definitional focus is not on the form of the plaintiff's cause of action but rather the defendant's activity giving rise to his or her asserted liability and whether that activity constitutes protected speech or petitioning").

Second, if the defendant meets that initial burden, the burden shifts to the plaintiff to establish a "probability" that he will prevail on that claim – or the Court must strike the claim.  Cal. Code Civ. Proc. § 425.16(b); *Equilon Enterprises, LLC,* 29 Cal. 4th at 67.  To meet this burden, the plaintiff must state and substantiate a legally sufficient claim.  *Rosenthal v. Great Western Fin. Securities*, 14 Cal. 4th 394, 412 (1996).  "Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  *Wilson v. Parker, Covert & Chidster*, 28 Cal. 4th 811, 821 (2002).

## II. Initially, Krell's state law claim arises from activity protected by two different provisions of the anti-SLAPP statute.

### A. The tax investigators' citations were "writing[s] made in connection with … any official proceeding authorized by law" – exercises of the right to petition protected under section 425.16(e)(2).

The statute specifically provides that "any written or oral statement or writing made in connection with . . .  any official proceeding authorized by law" is an "act in furtherance of a person's right of petition or free speech."  Cal. Code Civ. Proc. § 425.16(e)(2).

Here of course, the administrative citation proceedings of which Krell complains are an "official proceeding authorized by law."  As already discussed above, San Francisco has an administrative citation process for enforcing its tax code, S.F. art. 6, §§ 6.19-3 *et seq.*, enacted under authority expressly granted by the California legislature, Cal. Gov. Code §53069.4(a)(1).  Those proceedings include "administrative review by the local agency," *id.*, as well as judicial review, S.F. Tax Code art. 6, § 6.19-10 (incorporating judicial review provisions of Cal. Gov. Code § 53069.4).

And it is black-letter law that the actual commencement of administrative or judicial proceedings is an exercise of the right to petition and protected by the anti-SLAPP statute.  For purposes of section 425.16, "[t]he constitutional right to petition ... includes the basic act of filing

litigation or otherwise seeking administrative action." *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 19 (1995).  That is exactly what these citations did.  These citations are in the heartland of activity protected by the anti-SLAPP statute: the initiation of proceedings.  Indeed, the statute so strongly protects the right to petition that it applies even before proceedings begin; courts have held the statute applies to reports of wrongdoing made in preparation for a proceeding, *see Schaffer*, 168 Cal. App. 4th at 999, and to reports made in the hope that authorities might contemplate proceedings, *Dove Audio, Inc.*, 47 Cal. App. 4th at 784.  Where the anti-SLAPP statute applies to activities incidental to administrative or judicial proceedings, it applies even more strongly to the proceedings themselves.

**B.    Separately, Krell's suit arises from "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" – speech protected under section 425.16(e)(3).**

As if Krell's direct attack on the right to petition were not sufficient to trigger the anti-SLAPP statute, Krell also faults tax officials for publicizing allegations that he did not comply with San Francisco tax laws.  That is a separate independent reason why the anti-SLAPP statute applies.

The anti-SLAPP statute also includes as an "act in furtherance of a person's right of petition or free speech" "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," *id.* § 425.16(e)(3).  That provision applies here, where Krell faults the Tax Collector for posting citations in a public place, where everyone could see he was being cited for violation of San Francisco tax laws.

Krell himself establishes these were writings in "a place open the public or a public forum." Cal. Code Civ. Proc. § 425.16.  He alleges that "when citations were issued, these were taped in a very obvious manner, across Plaintiff's door, at 345 Grove Street, highly visible and embarrassing." Complaint ¶ 32.

Moreover, the writings here were plainly "in connection with an issue of public interest," within the scope of § 425.16(e)(3).  The threshold for "an issue of public interest" is quite low; indeed, lurid tabloids satisfy that standard.  "'[A]n issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is any issue in which the public is interested.  In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008).  Here,

of course, the citations are of public significance.  These citations concerned a parking operator's compliance with the S.F. Tax Code.  Whether or not a parking operator is complying with San Francisco's tax laws is an issue of public significance, because parking operators collect taxes from members of the public and hold those funds in trust, to be remitted to the City.  Any irregularity in the management of those public funds is a matter of paramount public interest.

And Krell's other allegations reinforce the conclusion that Krell is suing based on San Francisco's publication of his conduct.  For example, Krell alleges that San Francisco's investigations were "staged to get maximum shock value" because they occurred when the lot was busy.  Complaint ¶ 31.  And Krell's negligence claim against San Francisco attacks *the manner* in which San Francisco addressed his compliance issues: he contends that San Francisco employees had a duty "to investigate and to handle the subject matter in a proper manner."  Complaint ¶ 44.

Indeed, this lawsuit is about how the citations were handled, not their validity.  That is because the validity of the citations has been conclusively established by Krell's failure to exhaust his available remedies.  Here, Krell acknowledges the existence of an administrative remedy for his citations, but calls the appeal process a "sham."  Complaint ¶ 34.  But it is well established that when a person subject to an administrative action – like a citation – does not avail himself of the prescribed administrative remedy and then the prescribed judicial remedy, that administrative action is conclusively valid as a matter of California law.  *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (explaining that under California law, failure to exhaust administrative remedies or to exhaust the prescribed judicial remedy means that the validity of agency action is conclusively established). "[T]he rule [of exhaustion of administrative remedies] is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act."  *Abelleira v. District Court of Appeal*, 17 Cal. 2d 280, 292 (1941).  "The administrative remedy must be pursued as a condition precedent to the lawsuit."  *Westinghouse Elec. Corp. v. County of Los Angeles*, 42 Cal. App. 3d 32, 39 (1974).  "That the doctrine is applicable to tax matters is well established."  *People v. Sonleitner,* 185 Cal. App. 2d 350, 361 (1960).

For all of these reasons, Krell's suit falls within the scope of section 425.16(e)(3).

The first prong of the anti-SLAPP analysis having been satisfied – in two ways – the burden now shifts to Krell to demonstrate a probability of success on the merits.  But Krell cannot do so, as discussed next.[5]

**III.     Krell's California law claim is barred by state law immunities.**

Krell makes a claim for state law negligence against San Francisco.  But two different governmental immunities are a complete bar to his state law claims – the immunity for instituting or prosecuting judicial or administrative proceedings under Government Code section 821.6, and the immunity for actions to enforce tax obligations under Government Code section 860.2.  And supposing that one or both of these overarching immunities did not shield all of the conduct alleged here, other specific state law immunities supply redundant protections for several of the specific challenged actions.  Cal. Gov. Code §§ 818.4, 821.2 (immunity for decisions whether to issue permits and certificates); *id.* § 821.8 (immunity for entry onto property).  All of these immunities protect the City itself, not just its employees.  Cal. Gov. Code § 815.2.

**A.     Government Code section 821.6 bars all of Krell's state law claims because the challenged enforcement actions were all incident to administrative proceedings against Krell.**

Government Code section 821.6 is a far-reaching immunity that poses a complete bar to Krell's state law claims.  That section states in its entirety:

> A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Cal. Gov. Code § 821.6.

The Legislature enacted section 821.6 in order to "free[] investigative officers from the fear of retaliation for errors they commit in the line of duty."  *Baughman v. State of California,* 38 Cal. App. 4th 182, 193 (1995).  In enacting such a broad immunity, the Legislature balanced the need for impartial and vigorous enforcement of the laws against the need for a civil damages remedy for misguided enforcement – and resolved that balance in favor of immunity.  *Amylou R. v. County of*

---

[5] At this stage in the anti-SLAPP inquiry, the City does not have to put forth any evidence or argument as to whether Krell's claims are viable, but nonetheless outlines below some of reasons why Krell's claim cannot succeed.  The City will respond further when and if Krell purports to make a prima facie showing of a likelihood of success on the merits.

*Riverside,* 28 Cal. App. 4th 1205, 1212-13 (1994). Thus, this immunity applies whether officials allegedly "acted negligently, maliciously or without probable cause in carrying out their duties." *Baughman,* 38 Cal. App. 4th at 192; Gov. Code § 821.6. The immunity is broad, applying not just to legally trained prosecutors but to any public employee involved in instituting or prosecuting investigations or proceedings. *Asgari v. City of Los Angeles,* 15 Cal. 4th 744, 756-57 (1997); *Javor v. Taggart,* 98 Cal. App. 4th 795, 809 (2002); *Paterson v. City of Los Angeles*, 174 Cal. App. 4th 1393, 1405 (2009). Furthermore, where a public employee is immune from liability, the public entity employer is also immune. Cal. Gov. Code § 815.2; *Amylou R.,* 28 Cal. App. 4th at 1208-09.

Section 821.6 immunity is a complete bar to liability for all of the conduct that Krell attacks, regardless whether the conduct was malicious, negligent, or otherwise wrongful:

- Most obviously, the immunity applies to the decision to issue administrative citations, because issuing an administrative citation "institut[es]" an "administrative proceeding." Cal. Gov. Code § 821.6; *see, e.g.*, *Ross v. San Francisco BART*, 146 Cal. App. 4th 1507, 1516 (2007) (immunity for retaliatory administrative proceedings).

- The immunity applies to all actions taken by City employees while investigating Krell. Under California law, the immunity "extends to actions taken in preparation for formal proceedings. Because investigation is an 'essential step' toward institution of formal proceedings, it 'is also cloaked with immunity.'" *Amylou R.*, 28 Cal. App. 4th at 1210 (quoting *Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1436-1437 (1988)); *Baughman*, 38 Cal. App. 4th at 192. Thus, the immunity bars Krell's claim that City employees' decisions during the investigation damaged his business or were otherwise embarrassing. *See, e.g.*, *Amylou R.*, 28 Cal. App. 4th at 1212 (immunity for negligent conduct during investigation).

- The immunity applies to City employees' publicizing the proceedings against Krell. *See, e.g.*, *All Angels Preschool/Daycare v. County of Merced*, 197 Cal. App. 4th 394, 408 (2011) (§ 821.6 immunity for publicizing report of investigation even where publication breached confidentiality statute); *Ingram v. Flippo*, 74 Cal. App. 4th 1280, 1292 (1999) (employee's statements to press immunized, even though no prosecution actually occurred).

- Because Krell claims that the delay of his certificate of authority was caused by the citations, that claim is subject to the immunity. *Cf. Citizens Capital Corp. v. Spohn*, 133 Cal. App. 3d 887, 889 (1982) (section 821.6 immunity for proceedings related to license revocation).

Thus, section 821.6 is a complete bar to Krell's state law claims.

**B.  Separately, Government Code section 860.2 also bars all of Krell's state law claims because the challenged actions stem from administrative proceedings "incidental to ... collection of a tax" or otherwise from "the application of any law relating to a tax."**

To ensure that the threat of liability does not deter officials from securing the tax revenue necessary to provide essential services, the California Legislature has immunized tax collection activities from liability. Section 860.2 of the Government Code provides: "Neither a public entity nor a public employee is liable for an injury caused by: (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax. (b) An act or omission in the interpretation or application of any law relating to a tax." Cal. Gov. Code § 860.2. This immunity applies to both discretionary and ministerial actions in connection with tax enforcement. *Mitchell v. Franchise Tax Bd.*, 183 Cal. App. 3d 1133, 1137 (1986). That immunity is a complete bar to Krell's claims. Both subdivision (a) and subdivision (b) apply here.

In analyzing how subdivision (a) applies here, two points are significant. First, subdivision (a) of section 860.2 immunizes tax authorities from liability for instituting administrative proceedings incidental to tax collection – and it uses language similar to that used in section 821.6, *see supra* Section III.A. And just as courts have read section 821.6 to immunize not just a proceeding but also activities related to the proceeding – like investigation and publicity – it is appropriate to read section 860.2 to broadly immunize those activities. Second, subdivision (a) immunizes not just tax collection, but proceedings "incidental to" tax collection. Here, the requirements of the S.F. Code that officials applied to Krell are incidental to tax collection, because they insure proper tax collection. *Cf. Ainsworth v. Bryant*, 34 Cal. 2d 465, 476 (1949) (explaining that San Francisco's requirements that a retailer "register with the tax collector, procure a certificate of authority to collect the tax, and display it prominently in his store" were "reasonably adapted to insure the collection and proper remission of the tax"). Applying those principle to this case, subdivision (a) of section 860.2 immunizes San

Francisco's investigation of Krell, its citations, and the publicity incident to those proceedings. Similarly, where the delay in Krell's COA is attributable to issuance of citations, that conduct is immunized.

Moreover, subdivision (b) of section 860.2 broadly immunizes tax authorities for "an act or omission in the interpretation or application of any law relating to a tax." That provision applies to all of Krell's claims here, because Krell's allegations concern the application of the S.F. Tax Code to him. For example, whether or not Krell was entitled to a Certificate of Authority involves the "application of any law relating to a tax." Similarly, citations were issued as part of the "application of any law relating to a tax."

**C.      Additional state law immunities provide redundant protections for San Francisco.**

Though the City is protected from liability under the ironclad immunities of Government Code section 821.6 and Government Code section 860.2, other immunities also apply.

The Government Code confers immunity for issuing (or not issuing) "any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Cal. Gov. Code § 818.4 (entity immunity); *see also id.* § 821.2 (parallel immunity for public employees). The immunity also protects decisions to delay the issuance of a permit. *Thompson v. City of Lake Elsinore*, 18 Cal. App. 4th 49, 56 (1993). The immunity applies when discretion exists. *Id.* Moreover, it applies regardless whether animus affected the exercise of discretion. *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 811 (9th Cir. 2007) ("While the record suggests that the denial of Kay's permit may have been driven at least in part by animus on the part of City officials, the record also shows that the City was exercising its discretion as part of its planning and administrative duties."). The immunity applies here because the Tax Collector had discretion here to deny the Certificate of Authority. The S.F. Code provides that the Tax Collector "*may* refuse to issue the certificate where … the Tax Collector determines that the operator … is not in compliance with any provision of the Business & Tax Regulations Code." S.F. Tax Code § 6.6-1(f)(1) (emphasis added). As already discussed above, the issuance of citations to Krell gave the Tax Collector discretion to delay the 2015 COA.

In addition, the City cannot be liable for investigators and police officers entering Krell's property, under Government Code 821.8, which provides in relevant part that a "public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law."  Cal. Gov. Code § 821.8; *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 464 (2002) (immunity applies to entity as well under Cal. Gov. Code § 815.2(b)).  Here, the investigators' and officers' entry was authorized by the inspection provisions of the S.F. Tax Code. S.F. Tax Code art. 22, §§ 2216, 2225.  Given that authorization, there is no liability for entering Krell's lot.  *Cowing v. City of Torrance*, 60 Cal. App. 3d 757, 763-64 (1976) ("A licensed inspector has authority to enter business premises to carry out the policing of reasonable revenue regulations.").

**IV.     San Francisco is entitled to attorneys' fees for this special motion to strike.**

Section 425.16(c) states that a party who prevails on a special motion to strike under 425.16 "*shall be entitled* to recover his or her attorney's fees and costs."  Cal. Code Civ. Proc. § 425.16(c) (emphasis added).  Accordingly, an award of attorneys' fees to a prevailing defendant is "mandatory." *See*, *e.g.*, *Bernardo v. Planned Parenthood Fed. of Am.*, 115 Cal. App. 4th 332, 360 (2004).  The City has spent well in excess of $12,255.00 to date researching and drafting this motion.  Declaration of Peter J. Keith.  The City requests that the court order that Krell pay the City that amount in fees, plus any additional fees incurred in drafting the reply in this matter and preparing for and attending oral argument.  The City will provide a supplemental declaration regarding any additional fees incurred.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

The Court should strike Krell's state law claims and order Krell to pay San Francisco's attorneys' fees in the amount of $12,255.00, plus any supplemental amounts incurred in drafting the City's reply and preparing for and attending the hearing in this matter.

Dated:  June 1, 2015

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
PETER J. KEITH
Deputy City Attorney


By: */s/  Peter J. Keith*
PETER J. KEITH

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO